Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 CR 85-1 | **DATE** | 6/14/2002 |
| **CASE TITLE** | USA vs. Robin Rothberg | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: The Court grants defendant's motion for downward departure in part and denies it in part. We grant a two-level downward departure based on the combined factors of the lack of financial gain or motive, the defendant's unusual degree of acceptance of responsibility, and his family circumstances.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUN 2 5 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | 380 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GL | courtroom deputy's initials | 02 JUN 24 PM 5:06 Date/time received in central Clerk's Office | date mailed notice  mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | Case No. 00 CR 85-1 |
| ) | |
| ROBIN ROTHBERG ) | |

**DOCKETED**
JUN 2 5 2002

<u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Defendant Robin Rothberg entered a "blind" plea of guilty (that is, without the benefit of a plea agreement) to a charge of conspiracy under 18 U.S.C. §371 to commit copyright infringement in violation of 17 U.S.C. §506(a)(2) and 18 U.S.C. §2319(c)(1). The conspiracy involved a highly-organized Internet-based software piracy group called "Pirates With Attitudes" that involved perhaps hundreds of participants and members-only web sites that made available $1.4 million worth of computer software for downloading by members. The background facts underlying this seventeen-defendant prosecution are described in a prior decision by the Court, *United States v. Rothberg*, No. 00 CR 85, 2002 WL 171963 (N.D. Ill. Feb. 4, 2002), and will not be repeated here.

Based on the Court's determination that the value of the infringing items for purposes of U.S.S.G. §2B5.3 (1998 version) was $1,424,640, and other Sentencing Guidelines-related rulings, Rothberg's total offense level is seventeen, and his criminal history category is I, making the sentencing range twenty-four to thirty months imprisonment. Rothberg moved for a downward departure on a variety of grounds. The Court made an oral ruling at the time of sentencing granting Rothberg's motion in part and denying it in part, and making a two-level

downward departure based on a combination of several of the factors that he had argued. The purpose of this Memorandum Opinion is to elaborate further on the basis for the Court's decision.

1.   **Consistency with other sentences in similar cases**

The indictment alleged that the charged conspiracy began no later than January 1998. Actually PWA had existed and had obtained and made available pirated software before that date, but January 1998 was significant in that it was the effective date of the No Electronic Theft Act, which for the first time criminalized copyright infringement not involving a profit motive or commercial advantage. *See* Pub. L. 105-147 (Dec. 16, 1997). Prior to that date it was questionable whether copyright infringement that did not involve a profit motive was illegal. *See* discussion *infra* at 12.

Rothberg argues that no defendant in any prior case brought since the passage of the NET Act has been sentenced to prison. Relying on data from a Department of Justice website, he says that the four post-NET Act defendants sentenced for criminal copyright infringement who, like Rothberg, had no profit motive, received sentences of probation. He also says, citing the same data, that there were six cases in which defendants were sentenced for criminal copyright infringement for selling software on the Internet for profit; four of the defendants received sentences of probation, one received a prison sentence of twelve months and one day, and one received a sentence of seven months imprisonment plus seven months community confinement. Based on this data, Rothberg argues that a sentence within the Guideline range would be disproportionately severe, and he requests a downward departure.

The Seventh Circuit has held that the fact that a sentence within the Guideline range

2

would result in a punishment disproportionate to those received nationwide may, in an appropriate case, provide a basis for a downward departure. *United States v. McMutuary*, 217 F.3d 477, 490 (7th Cir. 2000). *McMutuary*, however, requires a threshold finding of similarity, and Rothberg has not made such a showing: he has told us nothing about the other cases. It is entirely possible that the probationary sentences in the cases he cites were the product of Sentencing Guideline calculations that (unlike in Rothberg's case) resulted in an offense level that permitted the courts to impose probation rather than imprisonment. Disparities that result from a proper application of the Guidelines "should never be considered as permissible bases for departure," *id.* at 489, citing *United States v. Meza*, 127 F.3d 545, 549 (7th Cir.1996).

The Court can certainly imagine a case in which a sentence which sticks out like a sore thumb from the mass of cases nationwide would meet *McMutuary's* criteria even without a case-by-case comparison. But this is not such a case. The data base referenced by Rothberg – eleven cases nationwide – is not large enough to provide by itself a meaningful basis for a finding of inappropriate disparity. *Cf. Soria v. Ozinga Bros., Inc.*, 704 F.2d 990, 995 (7th Cir. 1983) (rejecting, in an employment discrimination case, a statistical conclusion based on data involving fifteen incidents).

For these reasons, the Court rejects Rothberg's disparity motion.

## 2.    Diminished capacity

Rothberg, supported by a report from Dr. Maressa Hecht Orzack, a psychologist, argues that he suffers from an addiction to use of computers and the Internet and that this resulted in an inability to control his behavior. Guideline §5K2.13 provides that a downward departure may be warranted "if the defendant committed the offense while suffering from a significantly reduced

mental capacity," with exceptions not applicable here. The Seventh Circuit requires, as a basis for such a departure, a determination that "had it not been for the defendant's mental illness, he would not have committed the crime (or perhaps would have committed a lesser crime)." *United States v. Dyer*, 216 F.3d 568, 570-71 (7th Cir. 2000). Assuming for purposes of discussion that Rothberg's alleged "Internet addiction" qualifies as a "significantly reduced mental capacity" – a question we need not address – Dr. Orzack's report is not sufficient to support a finding of the sort required by *Dyer*. Specifically, the report fails to establish any sort of a causal connection between Rothberg's alleged addiction and any sort of compulsion to infringe copyrights; Dr. Orzack states this as a conclusion, but that aspect of her report is unsupported and unexplained. Though there might be, in some extremely attenuated sense, a connection between Rothberg's supposed compulsion to use computers and the Internet and the fact that his crimes were committed by use of the Internet (in the sense that if he had never used the Internet he would not have had the opportunity to engage in this offense), that sort of connection is far too attenuated to warrant a departure.

### 3. Substantial assistance to authorities

Rothberg argues that he should get a downward departure for his substantial assistance to the authorities even though the government has not moved for one. Guideline §5K1.1 and 18 U.S.C. §3553(e) make the filing of a motion by the government a prerequisite to a downward departure under that provision. In *Wade v. United States*, 504 U.S. 181 (1992), however, the Supreme Court held that a defendant may attack the government's refusal to file a §5K1.1 motion – and thus may seek a departure based on "substantial assistance" without that prerequisite – if the government's refusal to file the motion was based on an unconstitutional

4

motive or was not rationally related to a legitimate governmental end. *Id.* at 186. Rothberg says that his case falls within these narrow parameters.

The extensive record submitted by Rothberg reflects that the government proposed a plea agreement that included an agreed-upon §5K1.1 departure, but with a limitation proposed pursuant to Fed. R. Crim. P. 11(c)(1)(C): a maximum departure of one-third off the low end of the Guideline range determined by the Court. The government proposed and obtained similar agreements from one or two of the other defendants in this case; several others entered into plea agreements which provided for what is commonly known as a "free-fall" downward departure – i.e., with the extent of the departure left for the Court's determination. Though it is not entirely clear, it appears that the government was initially unwilling to do this in Rothberg's case based at least in part on its view regarding his particular role in the offense. Rothberg, for his part, was unwilling to agree to the proposed limitation on the degree of the departure. Though his counsel negotiated vigorously to remove the limitation, the government would not agree to do so. A letter from supervisory personnel in the United States Attorney's Office turning down Rothberg's request indicated that it was believed that Rothberg's dispute with the government over his alleged role in the offense – the government maintained he had been one of the organizers of PWA – made him virtually worthless as a government witness; the letter cited this as the (or at least a) basis for rejecting the request to remove the limitation on the extent of the departure. The government was concerned that cited Rothberg's unwillingness to own up to what it considered to be his role in the offense would give him a motive to shade his testimony as a government witness in order to minimize his involvement, and that this would result in a side-show if he testified, making him ineffectual as a government witness. The government also

5

contended in the letter that Rothberg's cooperation had not truly led to the prosecution of, or made the case against, anyone else. *See* Rothberg Appendix, Ex. 3 (letter of July 20, 2000).

Rothberg argues that the government's desire to control the extent of the departure is an inappropriate consideration which fails the *Wade* test. There is some authority to support this proposition. In *United States v. Stockdall*, 45 F.3d 1257 (8th Cir. 1995), the defendants pled guilty to a variety of offenses with mandatory minimum sentences. Their plea agreements required them to cooperate with the government and gave the government the discretion to decide whether to move for a downward departure under §5K1.1. At the time of sentencing, the government filed substantial assistance motions but limited them to certain of the offenses, expressly declining to make them as to other offenses that included mandatory minimum sentences. The defendants moved to enforce their plea agreements, construing them as requiring any §5K1.1 motion to apply to all offenses. The trial court denied the motion after holding a hearing at which the prosecution represented that it had acted as it did in order to retain control over the degree of reduction. On appeal, the Eighth Circuit ruled that the law permitted the government to limit a substantial assistance motion to certain offenses, but it held that the government's desire to limit the sentencing court's discretion regarding the degree of a substantial assistance departure was an improper motivation under *Wade*. The court said that the purpose of the statute that authorizes substantial assistance departures, 18 U.S.C. §3553(e), was to give prosecutors the ability to obtain cooperation and information, not "a general power to control the length of sentences," which the court viewed as an inherently judicial function. *Id.* at 1261. It held that "[t]he desire to dictate the length of a defendant's sentence for reasons other than his or her substantial assistance is not a permissible basis for exercising the government's

6

power under §3553(e)," and that if the government based its decision to file a §5K1.1 motion on that factor, or anything other than "its evaluation of the [defendant's] substantial assistance," it acted improperly. *Id. See also United States v. Anzalone*, 148 F.3d 940, 941 (8th Cir. 1998); *United States v. Davis*, 115 F. Supp. 2d 101, 106 (D. Mass. 2000) ("[M]anipulating the length of a defendant's sentence is an improper consideration when deciding whether to file a downward departure motion."). *But see United States v. Butler*, 272 F.3d 683, 687 (4th Cir. 2001) (rejecting proposition that decision to file motion must be based on nature of defendant's assistance but affirming that decision must be rationally related to a legitimate governmental end); *United States v. Duncan*, 242 F.3d 940, 947 n.11 (10th Cir. 2001) (rejecting argument that government cannot refuse to file motion for reasons other than nature of defendant's assistance); *United States v. Nealy*, 232 F.3d 825, 831 (11th Cir. 2000)(same).

It is unclear whether the Seventh Circuit would follow *Stockdall*. In *United States v. King*, 62 F.3d 891 (7th Cir. 1995), the court cited *Stockdall* in noting that "[a] few courts have indicated that the prosecutor's refusal to file a substantial assistance motion may be reviewable if irrational or withheld in bad faith," but it did not comment on the merits of the Eighth Circuit's position. *Id.* at 894 n.2. The Seventh Circuit has recognized arbitrariness as a proper basis under *Wade* for a challenge to the government's refusal to file a §5K1.1 motion, *see United States v. Santoyo*, 146 F.3d 519, 523-24 (7th Cir. 1998), but it noted that "substantive due process claims of this nature are highly disfavored." *Id.* at 523 n.3 (also noting that in two earlier cases it had held that arbitrariness is not a proper basis for a challenge). But as best we can tell, the Seventh Circuit has never been called upon to address the issue of whether a refusal to file a §5K1.1 motion due to its desire to control the length of the sentence – the argument made by Rothberg –

7

is an irrational or arbitrary consideration that violates *Wade*.

Fortunately we need not address this difficult issue in Rothberg's case, for the record reflects that the government's determination to limit the degree of a substantial assistance departure was based largely, if not entirely, on its assessment of Rothberg's cooperation. We have no basis to discredit the government's contemporaneous statements to this effect, which reflect what would be, even under *Stockdall*, a proper basis for refusing to move for a downward departure. Rothberg's motion for a downward departure on this basis is therefore denied.

### 4. Combination of factors

The Guidelines contemplate the possibility of a departure based on a combination of factors each of which might be insufficient alone to warrant a departure, though the Sentencing Commission believed that such cases would be "extremely rare." *See* Guideline §5K2.0, Commentary. *See also, e.g., United States v. Jones*, 158 F.3d 492, 499 (10th Cir. 1998). A sentencing court is "'required to consider the particular factors of [a] case as a whole, and any combination thereof, in determining whether there were sufficient extraordinary factors to take [a defendant's] case out of the 'heartland' of ... cases.'" *United States v. Sabino*, 274 F.3d 1053, 1078 (6th Cir. 2001) (quoting *United States v. Coleman*, 188 F.3d 354, 361 (6th Cir. 1999) (en banc)).

#### a. Family circumstances

A defendant's family ties and responsibilities ordinarily are not a proper basis for a departure. U.S.S.G. §5H1.6. "But 'ordinarily' is not 'never.'" *United States v. Wright*, 218 F.3d 812, 814 (7th Cir. 2000). A departure based on a defendant's responsibilities to a child or an infirm family member properly may serve as the basis for a departure, so long as the harm to the

8

family member is greater than the harm a normal family member would experience from incarceration of a person in the defendant's position, and care from other sources is not reasonably available to alleviate the harm. *Id.* at 815; *United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir. 1999).

Evidence submitted by Rothberg in connection with the sentencing hearing indicates that he provides necessary care to Bob Dean, the father of the woman to whom Rothberg is engaged to be married this coming August. Mr. Dean suffers from amyotrophic lateral sclerosis, sometimes called "Lou Gehrig's disease." He is still living at home with his wife and has to see his doctor frequently; travel to the doctor's office requires him to be lifted in and out of an automobile. Mrs. Dean, who had back problems, can no longer do the lifting, and in any event she does not drive a car. Rothberg provides both transportation and lifting assistance, which Ms. Dean characterizes as "indispensable" to the family's ability to keep her husband at home rather than consigning him to an extended care facility.

Though the Court is sensitive to the concerns of Rothberg's mother-in-law-to-be, in the particular circumstances of this case we are not satisfied that Rothberg has established his entitlement to a departure based on this factor alone. The Seventh Circuit's decision in *Wright* suggested that a court considering a "family circumstances" departure must consider whether the lowered sentence will actually address the risk of harm to the young or disabled family member (in that case, the trial judge had reduced the sentence from 235 months to 170 months, which the Seventh Circuit said "would [not] do the slightest good" for the defendant's seven year old child). *Wright*, 218 F.3d at 815. Though we do not read *Wright* as ruling out family circumstances departures unless the departure reasonably can be made to a level that

9

keeps the defendant out of prison, that case does indicate that a court must consider whether the departure would actually address the factors that led the court to consider making it in the first place. In Rothberg's case, for the reasons stated in open court at the time of sentencing, the Court is not prepared to depart downward to a sentence of probation or community confinement. In addition, though Mr. Dean unquestionably has significant needs as a result of his disease, Rothberg's relationship with him is more attenuated than in the usual case in which a departure based on family circumstances is contemplated, and the Court is not entirely satisfied that there is no one reasonably available, at least for the near term, who could lift Mr. Dean into and out of a car and take him back and forth to the doctor. In short, Rothberg has come close to establishing the basis for a departure on this ground alone, but he has fallen just short. Because, however, the basic predicate for a departure – an infirm relative for whom the defendant provides care – exists in this case, the Court will consider this factor in combination with the others discussed below.

b.  **Extraordinary acceptance of responsibility**

A defendant's extraordinary degree of acceptance of his responsibility for his crimes beyond what is required to obtain the credit provided in U.S.S.G. §3E1.1 may, in an appropriate case, justify a downward departure, but "circumstances permitting such departures are rare." *United States v. Bean*, 18 F.3d 1367, 1369 (7th Cir. 1994). The factors cited by Rothberg in support of his request for a departure, though certainly indicative of a sincere and thorough acceptance of responsibility, are with one exception not "extraordinary" or outside the norm. The one exception, however, is significant, it is not contemplated as part of §3E1.1, and it puts Rothberg somewhat outside the heartland of what that Guideline contemplates.

Despite the government's prior refusal to file, commit to file, or do anything to hint that it

10

would ever file a motion for downward departure under U.S.S.G. §5K1.1 based on substantial assistance, Rothberg continued to cooperate with the government, submit to interviews, and provide information pertinent to the government's prosecution of this case, including defendant Christian Morley, who went to trial. The information he provided is fairly described as beneficial (even if it did not, as noted earlier, lead to the prosecution of anyone else). Rothberg did this with no realistic hope of getting anything from the government in return. And in doing so, he put himself at risk of a significant detriment: without a plea agreement, there was nothing to prevent the government from using the information he provided against him at sentencing. *Cf.* U.S.S.G. §1B1.8(a) (if defendant agrees to cooperate and government agrees not to use the information defendant provides against him, the information may not be used in determining the applicable guideline range). Placing oneself at risk of an enhanced sentence by providing credible and useful information that not only implicates others but also implicates oneself goes beyond what §3E1.1 contemplates. The Court finds that Rothberg's efforts in this regard reflect a degree of acceptance of responsibility that is outside the heartland of §3E1.1, warranting consideration of a departure beyond the three-level credit that he obtained by virtue of the guideline.

c.  **Lack of financial gain or profit motive**

There is no serious claim that Rothberg committed the offense out of a desire to profit, or that he benefitted financially from his participation in the conspiracy. The software that was placed on the PWA sites was available to members free of charge. Though, as we have previously noted in other contexts, PWA members had to contribute something in order to earn the privilege of downloading, there is no evidence that Rothberg obtained any monetary gain

11

from his membership in the group.[1]

Prior to 1998, it was debatable whether a copyright infringement scheme like the one involved in this case – involving arguably "free" distribution of copyrighted items – violated the law. *See* former 17 U.S.C. §506(a) (requiring proof that defendant infringed copyright willfully "and for purpose of commercial advantage of private financial gain"). The terms "commercial advantage" and "private financial gain" do not necessarily preclude barter-type arrangements like PWA. *Cf. United States v. Black*, 116 F.3d 198, 202-03 (7th Cir. 1997) (noting, in context of construction of U.S.C. §2G2.2(b)(2), which uses the term "pecuniary gain" in connection with child pornography offenses, that "pecuniary gain ... does not exclude the possibility of swaps, barter, in-kind transactions, or other valuable considerations). But in 1994, a federal court in Massachusetts dismissed an indictment against an individual who had posted copyrighted software on a computer bulletin board where it could be accessed by subscribers to the bulletin board. The Court held that the government could not prosecute under the mail and wire fraud statutes an infringement that was not criminal under the laws governing criminal copyright infringement. *United States v. LaMacchia*, 871 F. Supp. 535 (D. Mass. 1994). It was partly a desire to plug the perceived *LaMacchia* gap that motivated Congress to pass the NET Act in December 1997. That statute added a provision to 17 U.S.C. §506(a) making it a crime to infringe a copyright willfully by reproducing or distributing one or more copies of copyrighted works worth more than $1000 – thus eliminating the requirement of proof of commercial or financial motivation. *See* 17 U.S.C. §506(a)(2). That is the provision that Rothberg and the

---

[1] Among other things, we have no way of knowing whether Rothberg would have purchased any of the software in question had it not been made available on the PWA sites.

12

defendants in this case were charged with conspiring to violate.

There is no question that PWA's activities violated the law in the post-NET Act environment. But it is equally clear that the defendants sentenced for copyright infringement offenses under the Guideline applicable in this case, U.S.S.G. §2B5.3 (1998), were all defendants whose cases involved a profit or commercial motive. This is partly a function of the fact that it was not until May 2000 that a new guideline based on the NET Act took effect – one which directly takes into account the presence or absence of commercial or financial gain, *see* U.S.S.G. §2B5.3(b)(3) (effective May 1, 2000)[2] – and partly a function of the fact that non-profit-motive criminal copyright cases were (and perhaps are still) a rarity. But one way or the other, Rothberg has established, and the government has not seriously disputed, that the heartland of cases contemplated by and subject to the pre-2000 Guideline §2B5.3 under which Rothberg is being sentenced were offenses "motivated by a desire for financial gain – either personally or commercially." *See* United States Sentencing Commission, No Electronic Theft Act Policy Development Team Report at 7 (Feb. 1999), available at www.ussc.gov/publicat/netrpt99.pdf.

Rothberg's is not such a case. His case therefore is an atypical one that falls outside the heartland of the Guideline to which he is subject, the type of case not considered or contemplated by the Sentencing Commission when it promulgated that Guideline, thus permitting a departure. *See generally Koon v. United States*, 518 U.S. 81 (1996).

---

[2] The fact that the new Guideline defines "commercial advantage or private financial gain" as including the receipt or expectation of receipt of anything of value, including other copyrighted works, does not alter our conclusion that non-profit-motive infringement cases are outside the heartland of the former Guideline under which Rothberg is being sentenced.

13

**d.  Degree of departure**

As the Court explained at the sentencing hearing, we find that a two-level departure properly takes account of the combination of factors discussed above. Ordinarily an "extraordinary acceptance of responsibility" departure, considered in terms of the structure of the Guidelines, allows for a one-level downward departure. As we have noted, Rothberg falls just a bit short of what it would take to warrant a departure on that basis alone. But Rothberg's family circumstances argument, which is not sufficient by itself to warrant a departure, allows us to "round up" to a one-level drop.

The absence of a profit motive or financial gain, would, under the current (post-2000) Guidelines, warrant a two-level decrease in the offense level, *see* U.S.S.G. §2B5.3(b)(2) (2001), though the adoption of that provision was accompanied by an increase in the base offense level provided in U.S.S.G. §2B5.3(a). We conclude that an additional one-level decrease appropriately takes into account the absence of a profit motive or financial gain.

### Conclusion

For the reasons explained above and those discussed in open court at the time of sentencing, the Court grants defendant's motion for downward departure in part and denies it in part. We grant a two-level downward departure based on the combined factors of the lack of financial gain or motive, the defendant's unusual degree of acceptance of responsibility, and his family circumstances.

Date:  June 14, 2002

MATTHEW F. KENNELLY
United States District Judge

14